UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,       :

                        Plaintiff,       :

      -against-       :

ADAM S. GOTTBETTER, MITCHELL G. ADAM,       :
and K. DAVID STEVENSON,

                      Defendants.       :

-------------------------------------------------------------------x

15 Civ. 3528 (JLL)

## FINAL JUDGMENT AS TO DEFENDANT ADAM S. GOTTBETTER

The Securities and Exchange Commission, having filed a Complaint and Defendant Adam S. Gottbetter ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)      to employ any device, scheme, or artifice to defraud;

(b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

2

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] by, directly or indirectly, in the absence of any applicable exemption:

(a)     Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(c)     Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who

receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51-1].

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $3,757,841.49, representing ill-gotten gains from the conduct alleged in the Complaint, together with prejudgment interest of $837,491.15. Defendant shall satisfy this obligation by paying $4,595,332.64 within 14 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard

4

Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Adam S. Gottbetter as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of this Final Judgment. Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

IX.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _5/28/_ , 2015

_____

UNITED STATES DISTRICT JUDGE

6

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,      :

             Plaintiff,      :      15 Civ. 3528 (JLL)

   -against-      :

ADAM S. GOTTBETTER, MITCHELL G. ADAM,      :
and K. DAVID STEVENSON,      :

           Defendants.      :
-------------------------------------------------------------x

## CONSENT OF DEFENDANT ADAM S. GOTTBETTER

1.    Defendant Adam S. Gottbetter ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and consents to the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    On September 3, 2014, Defendant pleaded guilty to an Information in United States v. Adam S. Gottbetter, 14 Cr. 467 (JLL) (D.N.J.) ("United States v. Gottbetter"), charging him with one count of conspiracy to commit securities fraud, in violation of Title 18, United States Code, § 371. In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in United States v. Gottbetter.

3.    Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

    (a)    permanently restrains and enjoins Defendant from violations of Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

1

and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b)     permanently bars Defendant from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

(c)     orders Defendant to pay disgorgement of $3,757,841.49, together with prejudgment interest of $837,491.15, for a total of $4,595,332.64.

4.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant

2

of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5.  In compliance with this policy, Defendant acknowledges the guilty plea for related criminal

3

conduct described in paragraph 2 above, and agrees: (i) not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; (iii) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

      12.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

4

13.    In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail, or facsimile transmission, or email of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

5

15.   Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: MAY 24, 2015

_____
Adam S. Gottbetter

On May 24th, 2015, Adam S. Gottbetter, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

Approved as to form:

_____
Mark E. Kasowitz
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Attorney for Defendant

ANGELA M. CRANDALL
MY COMMISSION # FF 151744
EXPIRES: August 24, 2018
Bonded Thru Notary Public Underwriters

6

EXHIBIT A

1                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
2                    Criminal No. 14-467(JLL)

3

4  - - - - - - - - - - - - - - - - -X
                     :         SEALED
5  UNITED STATES OF AMERICA     :     TRANSCRIPT OF
                     :      PROCEEDINGS
6        -vs-              :
                     :
7  ADAM S. GOTTBETTER,       :     September 3, 2014
                     :
8        Defendant.        :
                     :
9  - - - - - - - - - - - - - - - - -X     Newark, New Jersey

10

11

12

13

14  B E F O R E:

15                THE HONORABLE JOSE L. LINARES,
          UNITED STATES DISTRICT COURT JUDGE

16

17

18

19

20       Pursuant to Section 753 Title 28 United States Code, the
    following transcript is certified to be an accurate record
21  as taken stenographically in the above-entitled proceedings.
    S/Phyllis T. Lewis, CRR, CRCR
22  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
              PHYLLIS T. LEWIS, C.R.R., C.R.C.R.
23      Official Court Reporter - United States District Court
               Newark, New Jersey  07101
24                  (732) 735-4522

25

1      A P P E A R A N C E S:

2            PAUL J. FISHMAN, U.S. ATTORNEY
             970 Broad Street
3            Newark, New Jersey 07102
             BY:  NICHOLAS GRIPPO, Assistant U.S. Attorney
4                 JENNY KRAMER, Assistant U.S. Attorney
             for the Government.
5

6            KASOWITZ, BENSON, TORRES & FELDMAN, LLP
             1933 Broadway
7            New York, New York 10019
             BY:  DANIEL J. FETTERMAN, ESQ.
8                 JOSHUA GREENBLATT, ESQ.
             Attorneys for the Defendant.
9

A L S O   P R E S E N T:
10
Kevin Bradley, Special Agent, FBI
11   Jeffrey Clark, Special Agent, FBI
     Jeff Paterson, U.S. Pretrial Services
12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1          MR. GOTTBETTER:  Yes, your Honor.

2          THE COURT:  Go ahead.

3          MR. GRIPPO:  Thank you, your Honor,

4     Mr. Gottbetter, between in or about June of 2012

5     and in or about November of 2013, did you agree with others

6     to participate in two stock market manipulation schemes?

7          MR. GOTTBETTER:  Yes, your Honor.

8          MR. GRIPPO:  Did these schemes involve the publicly

9     traded stock of Lido International Corporation, which later

10    changed its name to HBP Energy Corporation, and Dynastar

11    Holdings, Incorporated?

12         MR. GOTTBETTER:  Yes.

13         MR. GRIPPO:  I will refer to those two companies

14    collectively as the "Target Companies."

15         Specifically, during the above referenced time

16    period, did you, together with others, conspire to

17    fraudulently inflate the price of the stocks of the Target

18    Companies?

19         MR. GOTTBETTER:  Yes.

20         MR. GRIPPO:  Did you seek to inflate the price of

21    the Target Companies' stocks to later sell the stocks at the

22    inflated price for the purpose of making a profit and/or to

23    make the Target Companies more attractive for financing

24    deals that you or your law firm or broker dealers would

25    handle?

1          MR. GOTTBETTER: Yes.

2          MR. GRIPPO:  In order to effectuate the scheme, did

3     your co-conspirators obtain and conceal control of large

4     portions of the free-trading shares of the Target Companies?

5          MR. GOTTBETTER: Yes.

6          MR. GRIPPO:  Did you and others also agree to

7     engage in manipulative trading of the stocks of the Target

8     Companies to create the false appearance of market interest

9     in these companies?

10          MR. GOTTBETTER: Yes.

11          MR. GRIPPO:  Now, specifically in connection with

12     the DYNA scheme, did you agree with others that an

13     individual, who we will refer to as the "Trader" would

14     engage in coordinated or matched trades that were designed

15     to fraudulently inflate DYNA's stock price and trading

16     volume?

17          MR. GOTTBETTER: Yes.

18          MR. GRIPPO:  In or around April of 2013, did you

19     arrange for the sale and transfer of approximately 1.5

20     million shares of DYNA stock to the Trader for the purpose

21     of the Trader using those shares to engage in manipulative

22     trading?

23          MR. GOTTBETTER: Yes.

24          MR. GRIPPO:  Did you direct the Trader or someone

25     acting on his behalf to wire $75,000 into your attorney

1    trust account to pay for the 1.5 million shares of DYNA

2    stock?

3             MR. GOTTBETTER:  Yes.

4             MR. GRIPPO:  Now, in or around April of 2013, did

5    you cause a stock certificate for the 1.5 million DYNA

6    shares to be sent via Federal Express to the Trader's

7    partner in Bellville, New Jersey?

8             MR. GOTTBETTER:  Yes.

9             MR. GRIPPO:  In furtherance of the DYNA scheme, did

10   you agree that the Trader would create and disseminate a

11   promotional mailer that would contain false or misleading

12   statements or material omissions?

13            MR. GOTTBETTER:  No.

14            MR. FETTERMAN:  Can you rephrase the question?

15            MR. GRIPPO:  In furtherance of the DYNA scheme, did

16   you agree that the Trader would create and disseminate a

17   promotional mailer that would contain false or misleading

18   statements or material omissions?

19            MR. GOTTBETTER:  Yes.

20            MR. GRIPPO:  And to that end, in April of 2013, did

21   you meet with the Trader to review a draft of a promotional

22   newsletter relating to DYNA?

23            MR. GOTTBETTER:  Yes.

24            MR. GRIPPO:  Did the promotional newsletter contain

25   a stock chart that advertised proposed trading activity in

31

1     DYNA stock?

2                MR. GOTTBETTER:  Yes.

3                MR. GRIPPO:  Did you understand at that time that

4     the trading activity depicted in the stock chart would

5     actually be the Trader's manipulative trading and not

6     legitimate open market trades?

7                MR. GOTTBETTER:  Yes.

8                MR. GRIPPO:  Did the promotional newsletter

9     disclose that the purported trade activity was really

10    manipulative trading conducted by the Trader with your

11    approval?

12               MR. GOTTBETTER:  No.

13               MR. GRIPPO:  Did the promotional newsletter

14    disclose yours or the Trader's involvement in the DYNA

15    promotion?

16               MR. GOTTBETTER:  No.

17               MR. GRIPPO:  In or about June of 2013, did you and

18    the Trader agree to begin executing coordinated open market

19    trades of DYNA stock to begin manipulating the stock?

20               MR. GOTTBETTER:  Yes.

21               MR. GRIPPO:  In or about July of 2013, did you

22    agree with the Trader and others that the Trader would use

23    an algorithmic trading system to manipulate DYNA's stock?

24               MR. GOTTBETTER:  Yes.

25               MR. GRIPPO:  Was the algorithmic trading system

32

1   described to you as a "black box" specifically developed for

2   manipulating stock prices?

3          MR. GOTTBETTER:  Yes.

4          MR. GRIPPO:  Specifically, did you understand that

5   the "black box" could manipulate the market by placing

6   blocks of free-trading shares into approximately 32 offshore

7   trading accounts in the names of third parties and executing

8   coordinated trades between those accounts to increase the

9   volume of the stock?

10         MR. GOTTBETTER:  Yes.

11         MR. GRIPPO:  And did you also understand that such

12  market manipulation would in turn fraudulently create the

13  false appearance of market interest and massive volume in

14  DYNA's stock?

15         MR. GOTTBETTER:  Yes.

16         MR. GRIPPO:  With respect to the HBPE scheme, in or

17  around July of 2013, did you recruit the Trader to

18  participate in a stock market manipulative scheme involving

19  HBPE?

20         MR. GOTTBETTER:  Yes.

21         MR. GRIPPO:  Specifically, did you and two other

22  stock promoters, one from London and one from Vancouver,

23  agree with the trader to use the black box to fraudulently

24  inflate the price and volume of HBPE's stock?

25         MR. GOTTBETTER:  Yes.

1          MR. GRIPPO:  Did you and others plan to sell the

2    HBPE stock to investors in the open market after

3    fraudulently inflating the price of the stock in a manner

4    described above?

5          MR. GOTTBETTER:  Yes.

6          MR. GRIPPO:  To put this plan in motion, did you

7    use your law firm to coordinate the allocation and deposits

8    of stock certificates among your co-conspirators' nominees

9    and their respective broker-dealers?

10         MR. GOTTBETTER:  Yes.

11         MR. GRIPPO:  Did you, together with others, arrange

12   to sell a majority of the free-trading shares of HBPE that

13   your co-conspirators secretly controlled to the Trader

14   through prearranged trades between the Trader and you or

15   your co-conspirators' nominees?

16         MR. GOTTBETTER:  Yes.

17         MR. GRIPPO:  Now, in or around September of 2013,

18   did you or others acting on your behalf prepare stock

19   purchase agreements to facilitate the sale and transfer of

20   approximately five million unrestricted shares of HBPE to

21   the Trader for the Trader to use for manipulative trading?

22         MR. GOTTBETTER:  Yes.

23         MR. GRIPPO:  Thereafter, did a co-conspirator or

24   the co-conspirator's nominee send via Federal Express a

25   stock certificate for five million HBPE shares to the

34

1    Trader's business partner in Belleville, New Jersey?

2            MR. GOTTBETTER:  Yes.

3            MR. GRIPPO:  In or around October of 2013, did you

4    agree with your co-conspirators that they would execute

5    prearranged matched trades of HBPE stock to begin the

6    manipulative trading?

7            MR. GOTTBETTER:  Yes.

8            MR. GRIPPO:  And did you later learn that those

9    matched trades between accounts of your co-conspirators'

10   nominees were in fact executed as planned?

11           MR. GOTTBETTER:  Yes.

12           MR. GRIPPO:  Now, in committing all of the above

13   acts, did you act knowingly and intentionally?

14           MR. GOTTBETTER:  Yes.

15           MR. GRIPPO:  Are you pleading guilty today because

16   you are, in fact, guilty of the crime charged in the

17   information, that is, conspiracy to commit securities and

18   mail fraud?

19           MR. GOTTBETTER:  Yes.

20           MR. GRIPPO:  Do you have any additional information

21   about this conspiracy that you could provide at a later

22   date, if asked to do so?

23           MR. GOTTBETTER:  Yes.

24           MR. GRIPPO:  Your Honor, the Government represents

25   to the Court that if this matter were to proceed to trial,

35

1    the Government would be prepared to prove all of the

2    essential elements of the offense charged in the

3    information, and based upon that representation and the

4    defendant's answers to the questions that I just asked, we

5    believe there is an adequate factual basis to accept the

6    plea of guilty today.

7            THE COURT:  All right.

8            Mr. Gottbetter, do you need to talk to your lawyer

9    for any other reason before I ask you to enter your plea in

10   this case?

11           MR. FETTERMAN:  May I have one moment, your Honor?

12           THE COURT:  You may.

13           (Counsel confer)

14           MR. FETTERMAN:  May I approach, your Honor?

15           THE COURT:  You may.

16           Counsel, do you want to come up?

17           (Sidebar held off the record)

18           THE COURT:  Phyllis, please put on the record that

19   counsel wanted the Court's guidance, since they were

20   out-of-state counsel, whether or not local counsel had to be

21   here before I took the plea, and the answer to that is no.

22           Do you concur, Ms. Kramer, and, Mr. Grippo?

23           MR. GRIPPO:  Yes, your Honor.

24           MS. KRAMER:  Yes, your Honor.

25           THE COURT:  All right.

36

1            So how do you wish to plead to the charges set
2       forth in the information, guilty or not guilty?
3            MR. GOTTBETTER:  Guilty.
4            THE COURT:  Look, Mr. Gottbetter, I think you
5       understand what you are doing here.  You are a smart person,
6       an educated person.  I think you have had enough time to
7       speak to your lawyer, and that your plea, based on the
8       testimony that you just gave, is supported by the facts and
9       is a knowing and voluntary plea, so I am accepting your
10      guilty plea, and you are now adjudged guilty of the charges
11      in the information.
12            I am going to schedule your sentencing date for
13      December 15th at 1:30 p.m.
14            Between now and then, the Probation Department is
15      going to meet with you.  You have a right to have your
16      lawyer present when you meet with Probation.
17            You will have the right to review the Probation
18      Department report before I see it, so that in the event
19      there is something in there that you believe is erroneous or
20      needs to be changed, you could have it changed by your
21      lawyer consulting with them, or if they don't agree, then
22      make a motion before me, and I will make a decision.  Okay?
23            MR. GOTTBETTER:  Yes, your Honor.
24            THE COURT:  All right.
25            Also, with regard to the issue of bail, my

31

1    understanding is that, and I guess I should be asking the

2    Government now, that the Government has no objection to an

3    order of release fixed at $500,000 for the execution of an

4    unsecured bond, and with the additional conditions of

5    Pretrial Services supervision, the surrender of travel

6    documents and not applying for any new ones, and another

7    condition of substance abuse testing or treatment, if

8    necessary, and that the other conditions are to maintain a

9    current residence or a residence approved by Pretrial

10    Services, and that he is to avoid all contact, direct or

11    indirect, with anyone who is or may be known to be a victim

12    or a potential witness in the case.

13         Does that generally coincide with your

14    understanding of the order of release, Counsel?

15         MR. GRIPPO:  Yes, your Honor.  That is correct.

16         One additional item.  I note that his travel is

17    restricted to New York, Florida and New Jersey unless

18    otherwise approved by Pretrial.

19         THE COURT:  Does that also coincide with your

20    understanding, Counsel?

21         MR. FETTERMAN:  Yes, your Honor.

22         THE COURT:  All right.  I will sign the order of

23    release in accordance with those terms.

24         Now, the other thing is that it is very important

25    that you appear for the sentencing.  Even though I am

38

 1    signing an order of release, Mr. Gottbetter, you have a duty

 2    and a responsibility to be here on the date of your

 3    sentencing.  If you don't show up, that has very important

 4    consequences because the U.S. Marshals are going to come get

 5    you pursuant to an arrest warrant that I would issue.

 6          Do you understand that?

 7          MR. GOTTBETTER:  Yes, your Honor.

 8          THE COURT:  All right.  So certainly, I don't want

 9    to have to do that.

10          In light of the cooperation agreement, if the

11    sentencing date is not feasible, and you need to adjourn it,

12    just make sure that you speak to my Deputy Clerk, okay?

13          MR. GRIPPO:  Yes, your Honor.

14          THE COURT:  All right.  Thank you, Counsel.

15          MR. FETTERMAN:  Thank you, your Honor.

16          MR. GREENBLATT:  Thank you, your Honor.

17          MS. KRAMER:  Thank you, your Honor.

18          MR. GRIPPO:  Thank you, your Honor.

19          THE CLERK:  All rise.

20          (The matter concluded)

21

22

23

24

25